## Case No. 3,733.

### DEDERER v. DELAWARE INS. CO.

[2 Wash. C. C. 61.][1]

Circuit Court, D. Pennsylvania. April Term, 1807.

MARINE INSURANCE — CAPTURE AND CONDEMNATION — ABANDONMENT — NOTICE — BARRATRY— WHAT CONSTITUTES — ATTEMPTED RECAPTURE— EVIDENCE.

1. The vessel insured was captured by the British, on the alleged ground that a war had been declared, or soon would be, between England and the United States. The crew was taken out by the captors, and the captain, mate, and a boy, left on board, the vessel being ordered to Halifax. The captain, apprehending the loss of all he had on board, and that he would be imprisoned, made an attempt to rescue the vessel, with the assistance of the mate and boy, which failed; and the Romulus was libelled and condemned at Halifax as lawful prize. A regular abandonment was made, and the loss was stated to have been by capture and barratry. Where a regular abandonment is made, the property vests in the insurer by relation to the time of capture, but the captain continues the agent of the insured, until abandonment. His acts, subsequent to capture, may operate to the advantage as well as to the disadvantage of the insurer; and the insured is protected in the clause in the policy, which binds the master to act after capture, only when it appears that he acted for the best for all concerned. The unlawful acts of the master are never to be sanctioned. The attempt to rescue the Romulus was unlawful, and furnished good ground of condemnation.

2. The nature of barratry, and the principles of law relating to it. It is not essential to con-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

stitute barratry, that it should be to the interest of the master. If the act of the master were intended to benefit the owner, although mistaken, it cannot be barratry, because it was not fraudulent, or criminal. Acts of the master may be illegal and yet not being criminal or fraudulent, they will not be barratrous.

3. If a sufficient cause for abandonment is stated by the assured to the underwriters, when he offers to abandon, he need not communicate other or additional causes, although they were known to him; if the underwriters refuse to accept the abandonment.

4. Depositions stated in the record of the proceedings of the court at Halifax, were allowed to be read to show the ground of condemnation.

5. Quere. Whether the register of a vessel is prima facie evidence of citizenship, although it may be such evidence of property?

This action was brought on two policies of insurance, dated March and May, 1806, on the ship Romulus, and on her freight, both valued: the former at and from New-York to Havana, and back again to New-York. (The vessel warranted neutral, to be proved in this country. No warranty as to the freight.) On her return she was captured by a British privateer, the captain of which assigned, as the cause of the capture, that war was either declared, or would soon take place, between Great Britain and the United States. All the hands were taken out of the Romulus, but the captain, the mate, and a boy; who, under a prize-master and hands, were sent to Halifax. On the passage to Halifax, the captain of the Romulus, whose all was on board, as he stated, and apprehending its loss and his imprisonment, and the injury which a loss of the property would produce to his owners; concerted with the mate and the boy, a plan to retake the vessel. The attempt was made, and after a warm contest was given up. The vessel and cargo were carried in, libelled as enemy's property, and condemned as good and lawful prize. The plaintiff, as soon as he heard of the capture, made a regular abandonment, which was refused by the underwriters.

The defendants offered to read depositions from the record of the trial at Halifax, to prove that the attempt to rescue the vessel was the ground on which the vessel was condemned. This was objected to, but admitted by the court, to show what was the ground of condemnation.

In the opening of the cause, it was made a question, whether the register of the vessel was prima facie evidence of the citizenship of the plaintiff, to prove the warranty of American property, but not of citizenship. The cases cited were [Murgatroyd v. Crawford] 3 Dall. [3 U. S.] 491; [Murgatroyd v. M'Lure] 4 Dall. [4 U. S.] 342; contra, [Woods v. Courter] 1 Dall. [1 U. S.] 141.

Sergeant and Ingersoll argued, that the plaintiff was entitled to recover on one of two grounds—capture, or barratry. As to the first, the right of recovery is certain, unless the attempt to rescue was a forfeiture of neutrality.

The libel and condemnation show that the court proceeded on the ground of enemy's property only. The attempt to rescue was produced by the misrepresentation of the captors, and therefore could not be made the ground of condemnation. The attempt to rescue was a consequence of the capture, which constituted a loss; and if the defendant was answerable for the capture, he is answerable for all the consequences of it. After the capture, the captain is equally the agent of the insurer and the insured, and the abandonment makes him, by relation, the sole agent of the former. Capture is, by abandonment, made a total loss; as much so as if the loss had been really total: and after a total loss, the captain ceases to be the agent of the owner. 1 Term R. 613. But, secondly, if the captain, after the capture, continued the agent of the insured, his attempt to rescue was an act of barratry. It was a criminal act, contrary to his duty; contrary to the law of nations; done, in part at least, for his own advantage, and therefore comes fully within the definition of barratry. 6 Term R. 379; Park, 91; Cowp. 143; Park, 90; 3 Term R. 277; Park, 94, 364.

Condy and Rawle, for defendants.

First; the attempt to rescue must be considered as the ground of condemnation, because it was a sufficient one, and no other appears to have existed. That to resist a search, or to attempt to rescue, is ground of condemnation, is proved by Vattel, and a number of other books which might be cited. The captain, after the capture, continued the agent of the insured. Park, 152; [Crousillat v. Ball] 4 Dall. [4 U. S.] 294. It is no proof, that the attempt to rescue was not the ground of condemnation; .that the libel states the vessel as enemy's property; and that she is condemned generally as good prize. These are the constant forms; because, if there be a breach of neutrality, the property is always considered as enemy's property.

Second; to constitute barratry it must appear that the captain acted fraudulently or criminally, with a view to his own benefit; and in all the cases, there were facts which proved that the motive was fraudulent or criminal. What was said in the case of Moss v. Bryrom, 6 Term R. 379, is very much qualified and explained by the declarations of the same judges, in 7 Term R. 505. Cases cited as to barratry, Park, 91; [Hood v. Nesbit] 2 Dall. [2 U. S.] 137. In this case it appears, also, that the captain acted under a misrepresentation. He supposed there was war between Great Britain and the United States, and that the act he attempted was lawful, and would redound to the advantage of his owners and himself. There could of course be neither fraud nor crime in the attempt.

Mr. Rawle made a new point for the defendant: that the insured, before he abandoned, had received a letter from his captain, mentioning the capture, and the unsuccessful attempt he had made to rescue the vessel, and stating that they were threatened to be libelled and condemned for that cause. This being known to the insured, it was his duty to have stated this to the underwriter as one of the grounds of abandonment. 1 Johns. 181.

As to this point, THE COURT observed, that if a legal ground of abandonment be assigned, it is sufficient, where the abandonment is refused. Had it been accepted, the underwriter would have been fully apprized of the attempt to rescue, as the letter of abandonment mentions that the insured is ready to furnish the proofs.

WASHINGTON, Circuit Justice (charging jury). The first question is, whether the plaintiff is entitled to recover upon the count which states the loss to have proceeded from capture. The defendant admits the fact, but answers that the plaintiff has forfeited his warranty of neutrality, by the misconduct of his captain; who, by an attempt to rescue the vessel, afforded a lawful ground for her condemnation. To this defence the plaintiff replies, that the alleged misconduct of the captain took place after he was captured, and at a time when he was as much a servant or agent of the insurers, as of the insured; consequently, his acts could not prejudice the latter as between these parties. It is even argued by the plaintiff's counsel, that the offer to abandon changed the condition of the parties, from the time of the capture, by relation; so that by that event, the captain became from that time the agent of the insurers. It is true, that where a regular abandonment is made, the property vests in the insurer, by relation to the time of capture; but the captain continues to be the agent of the insured, until the abandonment is made. His acts, subsequent to the capture, may operate as well to the advantage as to the disadvantage of the insured; it is his duty to do everything in his power for the preservation of the property committed to his care; and the clause in the policy, which permitted him to act for the best, to this end, without prejudice to the insurance, binds the underwriter to submit to the consequences of those acts, if performed for the benefit of all concerned. But the introduction of this clause proves, that after a misfortune has happened, the captain continues to be the agent of the insured, who might by his conduct prejudice the claim of his principal for indemnity, if his acts for the common benefit of all concerned, were not sanctioned by the underwriters. This clause, however, grants only a special authority, and protects the insured only, when from the facts it appears he acted for the best for all concerned. But, can it be said that he acts within this authority, when he does that which the law of nations, and his duty to his owners, forbid? Those who employed him are answerable to third persons for such conduct because they trusted him; not because such a power was im-

pliedly given to him. But the insurers did not employ him, though they granted him a special authority to act in a particular event, and in a particular way; and it never can be said, that from this authority a power to do an unlawful act is implied. If the act be not unlawful, the question always is, did he act for the best for all concerned? This is an inquiry proper for the consideration of the jury, upon the evidence submitted to them. But if the act be unlawful, then it is unauthorized by the underwriter. That the attempt to rescue the vessel was unlawful, and afforded a ground of condemnation, is proved by the opinions of the best informed jurists, and has received the sanction of the common law courts in a variety of instances. The doctrine was indeed admitted by the plaintiff's counsel, though said not to apply in this case; as the captain acted under misinformation given him by the captors. This excuse, however, will not do, as between the insurer and the insured; because the latter, before he can recover, must prove that he has strictly complied with the terms of his warranty. He cannot justify a breach of it, by alleging misconduct in third persons. Admitting the law to be so, the plaintiff then insists that the act which amounted to a breach of neutrality, proceeded from the barratry of the master; against which the defendants have undertaken to protect him.

It is certainly strange, after the repeated instances in which the courts have been required to define the term "barratry," a question should remain at this day as to the true import of it; and yet questions of difficulty frequently occur upon this clause in policies, when particular cases are to be decided by the former definitions of the term. The present case is one which admits of doubt, and has given rise to many ingenious arguments at the bar. Park defines barratry, "any act of the master, of a criminal or fraudulent nature, or which is grossly negligent, tending to his own benefit, to the prejudice of the owners, without their consent." The act must be fraudulent, and to the prejudice of the owners. If fraudulent, it is a criminal violation of the duty which the master owes to his employers. It is not essential to constitute the act of barratry, that it should be to the interest of the master, but if it be so, that fact is evidence of fraud: so is gross negligence. If the question turn merely on the fraud, it will always be necessary to look at the motives and intention which influenced the act. If the motive were to benefit the owner, it is an honest one, though it may be a mistaken one, and therefore the act cannot be called barratrous. The case of a wilful deviation for the benefit of the owner, is an example which attests the truth of the principle; but if made for the benefit of the master, it would be an act of barratry. The case of Moss v. Bryrom, as stated in Park, and the principle which he deduces from it, seem opposed to the above doctrine. But by

referring to the case itself, in 6 Term R. 379, and to the explanations which the judges in Phyn v. Royal Exch. Ins. Co., 7 Term R. 505, have given of their meaning when deciding that case; it will be found not to oppose, but to support the opinion we have delivered. The judges declare, that what was said in Moss v. Bryrom was in reference to the circumstances of the cause, which consisted of many acts of the captain of a criminal nature; and Ashurst adds that there is no case of barratry, merely because the act was against the interest of the owners; unless done with a fraudulent or criminal intent. But no fraudulent intention may appear, and yet if the act be of a criminal nature it will be barratrous. Marshall, it is true, says that no fault amounts to barratry, unless it proceed from an intention to defraud the owner; but he is not warranted in his position, by the case referred to, in which fraud was negatived by the jury. All the cases, when well examined, will show that if the act be fraudulent or criminal, it is barratry. But it does not follow, that every illegal act is a criminal one. For example; suppose the captain ignorantly commit a breach of blockade, or violate some foreign ordinance with which he is unacquainted: these acts would be illegal, but not criminal. The illegality of the act, though no improper or fraudulent motive appear, may be prima facie evidence of fraud or of crime; but this presumption may be repelled by evidence. If, in reality, there was no fraudulent or criminal intention; no particular view to the personal benefit of the master, but an honest though mistaken motive to benefit his owners; the illegality of the act will not make it barratrous. Apply these principles to the present case. The captain had received information from the captor, that there was or would be war between Great Britain and the United States; and this was assigned as the cause for the seizure. He declares, that under the impression of this fact, and from a fear of loss of personal liberty, as well as of his own property and that of his owners, he attempted the rescue. But whether he was really induced to this act by the belief that he was captured by an enemy, you must determine, upon all the evidence in the cause. If he was, then the attempt to rescue was not a criminal act. Nevertheless, if you should think that he acted for his own benefit, it was fraudulent, and would equally amount to barratry.

Verdict for plaintiff.